# McMullen *v.* The State.

*Indictment for Larceny.*

1. *Larceny; material ingredient of.*—There can be no larceny without a felonious intent; and this intent the jury must determine, in view of all the facts and circumstances.

2. *Same; what creates strong presumption of innocence.*—Where the taking is open, and there is no subsequent attempt to conceal the property, and no denial, but an avowal of the taking; a strong presumption arises that there was no felonious intent, which must be repelled by clear and convincing evidence, before a conviction is authorized.

[McMullen v. The State.]

3. *Same; charge to jury, what erroneous.*—A charge which requires the jury to acquit, merely because the taking, otherwise than by robbery or fraud, was open, avowed, and not denied, is erroneous; it does not leave the jury free to determine whether the presumption of felonious intent, created by these facts, is not satisfactorily overcome by other evidence in the case.

APPEAL from Circuit Court of Butler.

Tried before Hon. JOHN K. HENRY.

The appellant, Cain McMullen, was indicted and convicted for larceny of a cow, the property of one Flowers. The evidence showed that the cow in question was "marked with a swallow fork in the right ear, and an underbit in the left," and was "motley white, with some black spots about the head." She left the pen of her owner in Greenville, in the winter of 1872. One Mrs. Vines testified that, in the latter part of 1872, the cow came with her cattle to her pen, near the former residence of Flowers. There was testimony tending to show that McMullen owned a cow, whose general appearance was the same as Flowers' cow. She also had disappeared, and McMullen had told several persons about her, among them one Hamilton, who testified that, when he saw the cow at Mrs. Vines', he sent appellant word that he had found his cow, and witness, defendant and one Hartley, went over to Mrs. Vines' early next morning. When they arrived, it was after daybreak, and several persons were there. On looking at the cow, McMullen said it was his. One of the witnesses for the State testified, that he also thought the cow belonged to McMullen. McMullen was told by Mrs. Vines that the cow had Flowers' mark, and he had better not dispose of it without first having seen Flowers. McMullen remarked, he was satisfied the cow belonged to him, and put a rope around her horns, and drove her off towards Greenville. One or two witnesses who saw the cow in McMullen's possession informed him that the cow belonged to Flowers, and he had better not dispose of her until he saw Flowers; this he said he would do, but it seems that he did not. The testimony showed, further, that McMullen then drove the cow in the day time, along the public road, to Greenville, the county seat, and place where Flowers resided, and offered the cow for sale to a nephew of the prosecutor, among others, on the streets of Greenville in the day time. He sold the cow to a butcher about dinner time, in front of the market house. The value of the cow, as assessed by the jury, was twelve dollars, and McMullen sold her for eight dollars. McMullen stated, at the time of the

[McMullen v. The State.]

sale, that his cow "had been down in the piney woods, and he had just gotten her back."

This was the substance of the testimony. The defendant requested the court, in writing, to charge the jury: "If they believed, from all the evidence in the case, that the defendant took the cow openly, in the presence of other persons, other than by apparent robbery, or, having taken the property or cow, avowed the fact before he was questioned; then the taking is not larceny, but a mere trespass." The court refused to give the charge, and defendant excepted.

GAMBLE & BOLLING, for appellant.—"Where a man takes another's goods openly before him, or before other persons, otherwise than by apparent robbery, or, having possessed himself of them, avows the fact before he is questioned, . . . . . . then such taking is no more than a mere trespass." Wharton's American Crim. Law, § 1786 ; Roscoe's Criminal Evidence, 590 ; McDaniel v. The State, 8 Smedes & Marshall, 401 ; 8 Porter, 461 ; 1 Hale's Pleas of Crown, 509 ; 2 East's Pleas of Crown, 661.

JOHN W. A. SANFORD, Att'y Gen., contra.—In this State, the criterion to distinguish larceny from trespass, is the intention of the wrong-doer to profit by the conversion of the property of another. Hawkins v. The State, 8 Porter, 461. "Whether the act be secret or open, in the day or night, is immaterial, except as manifesting, under the circumstances, the intent." 2 Bish.Crim. Law, § 705. The intention with which the act was done, must be left to the jury. 2 Russ. on Crimes, 7. The citations from the text books referred to by appellant, will show that they were used in reference to cases where there was no intention to convert the property of another to the profit of the trespasser, to the total deprivation of the owner. In each instance, it was clear that the trespasser intended to return the property to the owner.

BRICKELL, C. J.—The felonious intent is the material ingredient of larceny. The existence of the intent is not often capable of direct proof, but is matter of inference from the circumstances attending the caption and asportation. It is said by Blackstone, "The ordinary discovery of a felonious intent is where the party doth it clandestinely: or, being charged with the fact, denies it. But this is by no means the only criterion of criminality: for, in cases that may amount to larceny, the variety of circumstances is so

[McMullen *v.* The State.]

great, and the complication thereof so mingled, that it is impossible to recount all those which may evidence a felonious intent, or *animus furandi:* wherefore they must be left to the due and attentive consideration of the court and jury." 2 Cooley's Black., book 4, 232. If the taking is under claim of title, honestly made and believed, however puerile, or unfounded, or mistaken the claim may be in fact, it is not felonious. The test is not the validity, but the *bona fides* of the claim of title. If it is a mere subterfuge to cover a taking with the intent to convert another's property, it aggravates, rather than relieves from criminality. Whether it is *bona fide* or not, the jury must determine upon a view of all the facts of the case, under the guidance of proper instructions from the court. 2 Bish. Crim. Law, § 875; *Witt* v. *State*, 9 Mo. 663; *Vaughn* v. *Commonwealth*, 10 Grattan, 758; *Spivey* v. *State*, 26 Ala. 90.

The charge requested seems to have been extracted literally from Wharton's Crim. Law, § 1786. The sentence is: "There are cases where the taking is no more than a trespass; as where a man takes another's goods openly before him, or before other persons, otherwise than by apparent robbery; or, having possessed himself of them, avows the fact before he is questioned." We do not understand the author as asserting that larceny cannot be committed, when goods are openly taken from the possession of the owner, without force, or even without fraud; nor that because there is no secrecy attending the taking and carrying away, but it is avowed without inquiry, the offense cannot be committed. If such was the law, the bolder and more reckless the criminal, the greater his chances of escaping conviction. Clandestinity and falsehood are usual attendants of larceny; but it is sometimes committed openly, and boldly avowed. A strong presumption arises, when the taking is open, and there is no subsequent attempt to conceal the property, and no denial but an avowal of the fact, that there is not a felonious intent, which ought to be repelled by clear and convincing evidence, before there is a verdict and judgment of conviction. *Vaughn* v. *Commonwealth*, *supra*, opinion of MONCURE, J. The rule is very clearly stated by Mr. Greenleaf, as we do not doubt it was intended by Dr. Wharton to be understood: "If the taking, though wrongful, be not fraudulent, it is not larceny, but is only a trespass; and ought to be so regarded by the jury, who alone are to find the intent, upon consideration of all the circumstances. Thus, if it should appear that the prisoner took the prosecutor's goods openly, in his presence, or the presence of

other persons, and not by robbery; or, having them in possession, avowed the fact before he was questioned concerning them;" &c., "these circumstances would be pregnant evidences to the jury that the taking was without a felonious intent, but a mere trespass." 3 Greenl. Ev. § 157. In affirming as matter of law that the circumstances referred to converted the taking into a mere trespass, the charge is erroneous, and was properly refused. They were "pregnant circumstances," for the consideration of the jury; but it was their province to determine whether the presumption favorable to the prisoner arising from them was not repelled, in view of all the evidence.

We discover no error in the judgment of the court. It seems to us sufficiently certain, and to conform to the statute. R. C. § 3760.

The judgment must be affirmed.