.[Talbert, Alias, Etc. v. The State.]

# Talbert, Alias, Etc. *v.* The State.

## *Indictment for Larceny.*

1. *Intent in larceny, a question for the jury.*—In the trial of a defendant charged with larceny, the question of the intent with which he took the property, should be submitted to the jury, although the taking was openly done in the presence of the owner of the property and others, and otherwise than by robbery, and there is no subsequent denial or concealment; there is no presumption of law on the question ·of intent, unless the proof leaves no room for any reasonable inference either way. (The case of Johnson vs. The State, 73 Ala. 523, explained and limited; McMullen's case, 53 Ala. 531, adopted.)

2. *What is reasonable doubt.*—A doubt for which a reason can be given is not necessarily a reasonable doubt, but the doubt to entitle a defendant to acquittal must be actual and substantial.

3. *When a charge on reasonable doubt is bad.*—A charge is bad that requires the State to prove beyond reasonable doubt the falsity of the defense interposed by the defendant. All that can be required of the State is to prove the guilt of the defendant beyond a reasonable doubt.

APPEAL from the City Court of Washington.

Tried before the Hon. WILLIAM S. ANDERSON.

The defendant was tried for larceny. It appeared from the evidence that the property taken, a gun, was taken by the defendant openly in the presence of the owner and others. The State introduced evidence tending to show that as the defendant was carrying off the gun the owner requested him to return it and he said he

| 121 | 33 |
|---|---|
| f122 | 675 |
| 121 | 33 |
| 124 | 21 |
| 125 | 51 |
| 121 | 33 |
| 129 | 92 |
| 121 | 33 |
| 130 | 61 |
| 121 | 33 |
| 137 | 77 |
| 137 | 98 |
| 121 | 33 |
| 142 | 52 |

[Talbert, Alias, Etc. v. The State.]

would do so if the owner would pay him $8.00 which he owed him; that the $8.00 were paid, but the defendant refused to deliver up the gun. The evidence of the defendant tended to prove that he won the gun of the owner and told him that he would return the gun on payment of $40.00, which was its value; that after payment of the $8.00 defendant told the owner he would return the gun on payment of the remainder of the $40.00. Defendant asked the general charge and two other charges, one to the effect that the jury must believe the defendant guilty from the evidence "without a single doubt for which a reason can be given;" the other to the effect that if the jury believed from all the evidence that the gun was taken openly in the presence of the owner and others and there was no subsequent attempt to conceal it, connected with any claim of right whatever, they must acquit the defendant. These special charges were numbered 2 and 5 and were refused.

EDWARD P. WILSON, for appellant.—(1). The act of taking was done openly in the presence of other persons without any attempt to conceal the property and with claim of ownership to it. This was a mere trespass. *Johnston v. State,* 73 Ala. 523. (2). A reasonable doubt is a doubt for which a reason can be given.—*Hodge v. State,* 97 Ala. 37. (3). The facts as shown do not justify the assumption that a felonious intent existed at the time of the taking. Charges 3 and 6 should have been given.—*Beckham v. State,* 100 Ala. 15; *Williams v. State,* 44 Ala. 396.

CHAS. G. BROWN, Attorney General, for the State, cited, *Pellam's Case,* 89 Ala. 28; *Lucas' Case,* 96 Ala. 51; *Sims' Case,* 99 Ala. 91; *Peagler's Case,* 110 Ala. 13; *Munker's Case,* 87 Ala. 98.

TYSON, J.—There is a conflict in the decisions of this court upon the question where a defendant is charged with larceny and the evidence discloses that the taking was open and in presence of the owner or other persons and there is no subsequent denial or concealment of the act, as to whether he can as a matter of law be convicted.

The earliest case in this State is *McMullen v. The State,* 53 Ala. 531, where the rule was declared to be "if it should appear that the prisoner took the prosecutor's goods openly, in his presence or the presence of other persons and not by robbery; or having them in possession, avowed the fact before he was questioned concerning them," etc., "these circumstances would be pregnant evidences to the jury that the taking was without felonious intent, but a mere trespass." They were "pregnant circumstances" for the consideration of the jury; but it was their province to determine whether the presumption favorable to the prisoner arising from them was not repelled, in view of all the evidence.

Notwithstanding this case was expressly overruled upon this point in *Johnson's Case,* 73 Ala. 523, which we will give an extended notice later on, this court in the case of *Barnes v. The State,* 103 Ala. 44, reaffirmed the doctrine there declared and cited it with approval, when Justice McClellan said: "Charge 3 refused to the defendant in effect declared that there cannot be a larceny where the capture is open and in the presence of other persons and there is no subsequent denial or concealment of the act. This is not the law and the charge was well refused." It must not be overlooked that it is a question of intent we are called upon to deal with, and its existence is only susceptible of ascertainment from proof of acts, conduct or declarations of the prisoner and must of necessity lie in inference and solely deducible as an inferential fact from the evidence showing his acts, conduct, declarations and other circumstances attendant upon the taking.

It may be that a bold and reckless thief, in order to relieve himself of the criminal act, might adopt the plan of taking the personal property of any other in the very presence of the owner or of other persons. If he had the felonious intent, and this he must have to make him a thief, such a taking and carrying away would rather aggravate the offense than otherwise. Certainly the law offers no premium, such as his acquittal, for his venality, which would only tend to make the bold more bold, and the reckless more reckless. If the manner of taking is adopted as a mere device to steal, he would be none the

less guilty than he would have been had be adopted the methods of a "sneak thief." Again a daring thief could adopt this device to steal the goods of another under a simulated or fraudulent claim of ownership or to satisfy a pretended or fraudulent debt which he might claim against the owner. As aptly said by Chief Justice Brickell in *McMullen's Case*, "We do not understand that larceny cannot be committed, when goods are openly taken from the possession of the owner without force or even without fraud; nor that because there is no secrecy attending the taking and carrying away, but it is avowed without inquiry, the offense cannot be committed. If such was the law, the bolder and more reckless the criminal, the greater his chances of escaping conviction. Clandestinity and falsehood are usual attendants of larceny; but it is sometimes committed openly, and boldly avowed."

This brings us to a consideration of the doctrine announced in *Johnson's Case*. An examination of that case discloses the fact to be that the taking and carrying away was by the express consent and direction of the owner. The defendant was ordered by the prosecutor to take the articles from the counter in the store and carry them to his (prosecutor's) house. In compliance with this command the defendant openly in the presence of the owner and others picked up the articles of merchandise charged to have been stolen and walked out of the store with them, remarking that he did not believe he would ever get his pay for labor performed by him upon the farm belonging to the father of the prosecutor, and upon which the prosecutor also worked, and that he would take the goods and save that much.

To constitute larceny the taking must be tortious and against the consent of the owner, as well as with a felonious intent to deprive the owner of his property. If his possession is acquired with the consent of the owner and the *animo furandi* is formed after the caption has been completed and the possession acquired, it is not larceny, but may be embezzlement. Clark's Manual of Crimnal Law, p. 164, § 963; *Green v. The State*, 68 Ala. 539. Under these facts which were undisputed, the prisoner was as a matter of law entitled to have the court charge the

jury affirmatively to acquit him of the charge of larceny without reference to whether the taking was openly in the presence of the owner or others.   Therefore what is said in the opinion upon the subject of an open taking of the goods in the presence of the owner or other persons was unnecessary to a decision of the question presented upon the facts and must be regarded as *dictum.* Notwithstanding the case of *McMullen* is overruled in this *dictum,* we are of the opinion that *McMullen's Case* asserts the correct rule and we adopt it, and this *dictum* in conflict with it is overruled.

The foregoing considerations show that the taking of goods in the presence of the owner or other persons otherwise than by robbery will not raise the presumption as a matter of law that a felonious intent did not exist in the mind of the defendant, but that its existence or non-existence should be submitted to the jury for their determination when the other essentials of the charge of larceny were shown by the evidence, such as the taking and carrying away against the will of the owner, etc.   Nor do we mean to be understood as saying that cases cannot arise where the fact of intent is involved, its existence or non-existence cannot be affirmed as a matter of law, but, in such cases, the evidence must be clear and leave no room for any reasonable inference against its existence or non-existence.

What we have said serves to demonstrate there was no error in refusing to the defendant charges numbered 1, 5 and 6.   Charges 2 and 3 predicated the right of the defendant to an acquittal if the jury, from all the evidence, had a single doubt of his guilt for which a reason can be given.   "A mere doubt, however honestly entertained, is not enough upon which to base an acquittal.   Nor is a doubt for which a reason may be given necessarily a reasonable doubt, although a reasonable doubt may be a doubt for which a reason can be assigned."—*Roberts v. The State,* 25 So. Rep., 238.   Obviously this is true, since the doubt must be actual and substantial to entitle a defendant to an acquittal, and therefore a reasonable doubt, while a doubt for which a reason can be given may be capricious, speculative and without the shadow of substance.—*Peagler v. The State,* 110 Ala. 13.

Charge 4 was bad in requiring the State to prove beyond a reasonable doubt the falsity of the defense interposed by the defendant. All that can be required of the State is to prove the guilt of the defendant beyond a reasonable doubt.

The judgment of the circuit court must be affirmed.

Affirmed.